## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JAMES L. SALAZAR AND JUDY A. SALAZAR**,

      Plaintiffs,

v.                                                   **No. 12cv1182 MCA/RHS**

**INDYMAC BANK, F.S.B.;**
**ONEWEST BANK, FSB**, in its own capacity and as
acquirer of certain assets and liabilities of Indymac Bank;
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC**.;
and **MERSCORP HOLDINGS, INC**.;
and, names: **John Doe's 2-2,541**, inclusive, said names being fictitious,
it being the intention of the Plaintiffs' to designate any and all
entities involved in the acts of malfeasance alleged herein,
the true names of the fictitious Defendant's are otherwise
unknown at present time and will be supplemented by amendment
when ascertained, et. al;
**Elizabeth Mason, the Castle Law Group, LLC;**
**Elizabeth M. Drantrell; Andrew P. Yarrington;**
**Castle Stawiarski, LLC, Castle Meinhold,**
**Castle Meinhold Stawiarski,**
**Castle Meinhold Stawiarski Legal Services**,

      Defendants.


## MEMORANDUM OPINION AND ORDER
## DENYING EMERGENCY INJUNCTIVE RELIEF AND
## DISMISSAL OF AMENDED COMPLAINT

**THIS MATTER** comes before the Court on pro-se Plaintiffs James L. and Judy A. Salazar's

*First Request that the Court Take Judicial Notice of Complaint filed by Defendant's [sic]*

*Unrecorded Assignment*, filed January 17, 2013 (Doc. 20); on their emergency request for a Stay

of Foreclosure, filed late in the afternoon of January 22, 2013 (Doc. 22); and on Defendants

OneWest Bank, FSB ("OneWest") and Mortgage Electronic Registration Systems, Inc. ("MERS")

*Motion to Dismiss Amended Complaint and Complaint for Declaratory and Injunctive Relief*, filed

February 7, 2013 (Doc. 33).  Plaintiffs have not responded to the motion to dismiss.  The foreclosure

sale was to take place at 11:00 a.m. on January 24, 2013.  *See* Doc. 22 at 2.  With such untimely and limited notice, the Court was unable to schedule a hearing on the Plaintiffs' emergency request, and the Court assumes that the sale was conducted and that the request is now moot.

The Court has carefully reviewed the documents the Plaintiffs have filed in this case and the documents the Defendants submitted with their motion to dismiss, however, and concludes that, even if the emergency motion for stay had been timely, the Court would not be authorized to grant it, and that their Amended Complaint must be dismissed for several reasons.  The Court will take judicial notice of the state-court pleadings and docket sheet that the Plaintiffs and Defendants have submitted.  The Court will dismiss the Amended Complaint.

## I.       PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs initiated the present action by briefly modifying a form complaint freely available on the internet.  *See* http://livinglies.files.wordpress.com/2008/11/template-complaint1.pdf (last visited on 1/28/2013).  The Court has collected some specific facts from the state-court foreclosure proceedings of which the Plaintiffs request the Court take judicial notice, but otherwise, the Plaintiffs' Complaint and Amended Complaint consist largely of generic and vague allegations garnered from the form complaint, as well as legal conclusions derived from that complaint, which do not concern or implicate the named Defendants in this matter or the conduct giving rise to the present action.

According to the allegations in the Amended Complaint and the documents submitted by the parties, in August 2007 the Plaintiffs borrowed $650,000, secured by a mortgage and Deed of Trust, on their principal residence in Santa Fe, New Mexico, where they still reside.  *See* Doc. 20 at 5-6 (state-court Complaint for Foreclosure at 1-2); Complaint (Doc. 1) at 4-5.  Defendant MERS was

listed as the beneficiary and nominee of the Lender and its assigns in the mortgage documents.  *See* Doc. 20 at 5; Doc. 35-1 at 15 (Plaintiffs' mortgage).

The Plaintiffs stopped making their mortgage payments in January 2011[1].  *See* Doc. 20 at 6; Doc. 35-1 at 2 (state-court complaint for foreclosure); Doc. 39-4 at 1-2 (state-court judgment adopting allegations of complaint and finding Plaintiffs in default).  On August 30, 2011, OneWest Bank, to whom the mortgage had been assigned by MERS from IndyMac Bank, *see* Doc. 20 at 10, filed a complaint to foreclose its mortgage lien on the property in *OneWest Bank, FSB v. Salazar*, D-101-cv-20112705 (1st Jud. Dist. Ct. Santa Fe County, N.M.).  *See* Doc. 35-1.  The law firm of Castle Stawiarski, LLC, through its attorneys Elizabeth Mason, Keya Koul and Steven Lucero, represented OneWest.  *See id.*

The Salazars wrongfully attempted to remove that foreclosure action from state court to this Court.  The Plaintiffs did not file their notice of removal until 2:12 p.m. on November 16, 2012, right before the state court conducted a 3:00 p.m. hearing on OneWest Bank's motion for summary judgment in its foreclosure action.  *See* Doc. 20 at 11 (Docket sheet from state-court case).  This Court *sua sponte* remanded the foreclosure action to state court on November 27, 2012.  *See OneWest Bank FSB v. Salazar*, No. 12cv1193 KBM/WPL Doc. 5 (D.N.M. Nov. 27, 2012) (Conway, J.) (concluding that there was no federal question on the face of the foreclosure complaint and that

---

[1]  The Plaintiffs request that the Court take judicial notice of the foreclosure complaint.  The basis of foreclosure is the allegation that Plaintiffs stopped making their loan payments; and the state court has found in favor of OneWest bank on that issue by entering a judgment of foreclosure.  But the Amended Complaint alleges that the Plaintiffs "has [sic] paid each and every payment on time from the time of the loan closing through the present."  Am. Compl. at 19, ¶ 4.  The Court has found that this allegation is taken verbatim from the form complaint, and is but one example of the inconsistencies in the Plaintiffs' pleadings.

the case had been improperly removed under 28 U.S.C. § 1446 and 28 U.S.C. § 1441(b))[2].

The Plaintiffs filed their generic federal *Complaint for Damages* on November 15, 2012, the day before the state-court hearing was scheduled. The state court entered a judgment of foreclosure and appointed a special master on November 28, 2012; it filed another Order on December 4, 2012; and a notice of sale was filed on December 31, 2012. *See* Doc. 20 at 11.

The Plaintiffs filed their request that this Court take judicial notice of the state-court proceedings and documents on January 17, 2013, *see* Doc. 20, then filed a *First Amended Complaint* on January 18, 2013, incorporating the generic allegations from their original Complaint, adding the attorneys for OneWest Bank as Defendants, and retitling their Complaint as one for Wrongful Foreclosure, Fraud, Rescission, Declaratory Judgment to Quiet Title and to Void or Cancel unrecorded Assignment of Mortgage and Deed of Trust, Slander of Title, Cancellation of a Voidable Contract, and Negligence. *See* Doc. 21. The Amended Complaint alleges that each Defendant "claim[s] or appear[s] to claim some right, title, estate, lien, or interest in the Property adverse to Plaintiff's title . . . [which] constitute a cloud on Plaintiff's title . . . ." Doc. 21 at 4. They contend

---

[2] The Salazars complain bitterly that, because the Order remanding the case to state court was filed only 11 days after the notice of removal was filed, the Court must have had the nefarious motives of furthering "political and sexism favors" for doing so. Doc. 20 at 3. The Court is mandated by statute, however, to remand any case that has been improperly removed "at any time." *See* 28 U.S.C. § 1447 ©. It is the Court's experience that defendants in foreclosure actions often seek to improperly remove the cases to federal court in an effort to delay the state-court proceedings, and the Court notes that federal district courts around the nation have begun *sua sponte* remanding these suits to state court. *See, e.g.*, *U.S. Bank, Nat'l Ass'n v. Williams*, No.12–1756–JFA/VH, 2012 WL 2500466, *1 (D.S.C. June 28, 2012) (noting that "*sua sponte* remand is available under appropriate circumstances" and *sua sponte* remanding improperly removed foreclosure action); *JPMorgan Chase Bank, Nat'l Ass'n v. Canyon*, No. 1:10–cv–894, 2010 WL 7199515, *2 (S.D. Ohio Dec. 29, 2010) (concluding that defendant in foreclosure case was barred from removing case under § 1441 and that she had not demonstrated a federal question on the face of the complaint, and recommending *sua sponte* remand).

that OneWest Bank had no "legal standing" to begin the foreclosure proceedings because it did not record the assignment of the mortgage from IndyMac Bank.  *Id.* at 6.

As noted above, the First Amended Complaint primarily consists of a number of conclusory statements, including allegations that all the Defendants failed to "disclose the true character of their financial services services and debt collection practices" in some undefined way; and that they "engaged in a scheme of illegal, unfair, unlawful and deceptive business practices . . . including foreclosure services" in an undescribed manner, referring only to the general allegations in their original Complaint.  *Id.* at 6-7.  The Court, therefore, has reviewed the allegations in the original Complaint to try to flesh out these conclusory allegations.

In the Complaint, following the example of the form complaint, the Plaintiffs engages in a general legal discussion regarding REMIC and refers to several unnumbered exhibits, none of which are attached to the Complaint.  They initially allege that an unnamed Lender was actually a "Loan seller" who conspired with the appraiser and the mortgage broker – none of whom are named Defendants, but whose names have long been known to Plaintiffs – to induce the Plaintiffs to execute a loan that did not "meet normal underwriting standards for residential loans."  Compl. (Doc. 1) at 6-7.  They contend that the appraisal was "knowingly inflated," resulting in "usury," and that the Lender/Loan seller did not perform its required due diligence and evaluation of the loan. *Id.* at 7-8.  They contend that the Lender/Loan seller was neither "the source of funding nor the [actual] Lender," at the time the mortgage was recorded and that it mislead them regarding the real parties in interest because "the presence of a financial institution in the matter was a ruse."  *Id.* at 8, 10-11.  The Plaintiffs' principal legal theory is that, when a different financial institution (apparently IndyMac Bank) purchased the mortgage from the Lender/Loan Seller through a prior

agreement, IndyMac Bank allegedly paid off the mortgage loan in full before the mortgage was even recorded, thus there is no "loan" on which OneWest may foreclose. *See id.* at 10-11. They also contend that the August 2007 loan closing was only an "alleged loan closing" because it was part of an "illegal scheme to issue unregulated [mortgage-backed] securities . . . based upon the negotiation of non-negotiable notes, the terms of which had been changed, altered or amended" by the "securitization process" "after the execution by the Plaintiffs" *Id.* at 21, 22. In subsequent allegations, however, the Plaintiffs inconsistently identify IndyMac Bank "and/or undisclosed third parties" as the "originating Lender." Doc. 1 at 25. Plaintiffs allege that, at closing, IndyMac and/or these allegedly undisclosed third parties failed to make undescribed required disclosures under sections 12 CFR §§ 226.17 and 226.18 of TILA and 24 CFR §§ 3500.6 & .7 of the Real Estate Settlement Procedures Act ("RESPA"). Compl. at 27. They also allege that the Defendants failed to disclose that the loan contract was "void, illegal, and predatory" because the TIL disclosure showed a "fixed-rate schedule of payments, but did not provide the proper disclosures of the contractually-due amounts and rates." *Id.* at 28. Plaintiffs also contend that the Defendants failed to provide a HUD statement that properly reflected the "Yield-Spread Premium" as required by TILA, in violation of 12 C.F.R. §§ 226.4, 226.17, and 226.18 (c)(1)(iii) & (d). *Id.* Plaintiffs contend that, during the life of the loan, the Defendants failed to properly calculate the proper interest and overcharged interest on the loan, which made their foreclosure figures inaccurate. *See id.* at 30.

In the Amended Complaint, Plaintiffs bring a cause of action for rescission, return of all loan payments and fees paid, and monetary damages under the Home Ownership Equity Protection Act, ("HOEPA"), 15 U.S.C. § 1639(a)(1) & (h) because unspecified Defendants allegedly failed to make required disclosures, allegedly required them to pay closing fees and costs in excess of 10% of their

loan, and extended credit without regard to the Plaintiffs' ability to pay. *See* Am. Compl. at 13-16.

They bring a claim for violation of RESPA, 12 U.S.C. § 2607, for having "accepted charges for the rendering of real estate services which were in fact charges for other services performed," but they have not named the mortgage broker or other entity that allegedly accepted those charges. *See id.* at 16. They bring claims for rescission under TILA, 15 U.S.C. §§ 1601 and 1605, for improperly calculating the annual percentage rate and failure to include and disclose charges on the TIL statement. *See id.* at 17-18. They seek monetary damages for an alleged violation of the Fair Credit Reporting Act ("FCRA") under 15 U.S.C. § 1681(n),(o), and (s) for reporting allegedly inaccurate information on their credit reports, swearing that they have "paid each and every payment on time from the time of the loan closing through the present." *Id.* at 18-19. They bring state-law claims for fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, conspiracy, usury, and fraud arising from the alleged omissions and failures to disclose information required by the federal lending statutes, for inducing the Plaintiffs to enter into a loan that was not suited to their ability to repay, and for allegedly charging excessive fees and undisclosed "rebates and kickbacks." *See id.* at 19-24; *id.* at 28-30. They also allege violation of the Ohio laws prohibiting civil RICO conspiracy. *See id.* at 24-25. They seek to quiet title and to compel the Defendants to "transfer or release legal title and alleged encumbrances . . . and possession of the Subject Property" to them, along with all payments made towards the loan amount and damages in the amount of ten times the mortgage amount. *See id.* at 25-28. Based on the type and format of Plaintiffs' claims for relief, it seems even more clear that their Complaint and Amended Complaint

> bears obvious indicia of being derived from generic foreclosure pleadings filed throughout the country [which] set[] forth [at least ten] federal and state law claims: (1) violations of the federal Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S .C. 1639 et seq. ; (2) violations of the Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. 2601 et seq. ; (3) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq. and Regulation Z, 12 C.F.R. 226.1 et seq. ; (4) violations of the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq.; (5) fraudulent misrepresentation; (6) breach of fiduciary duty; (7) unjust enrichment; (8) civil conspiracy; (9) civil RICO; (10) quiet title . . . .

*Bonner v. Redwood Mortg. Corp*., No. C 10-00479 WHA, 2010 WL 1267069, 2 (N.D.Cal. March 29, 2010) (dismissing case). As support for their Amended Complaint, Plaintiffs allege that they have "retained forensic examiners"[3] and that their loan "was transferred into the trust a mortgage backed security." Am. Compl. (Doc. 21) at 5. Because the Plaintiffs did not receive any of the trust agreements, and the assignment of mortgage was allegedly never recorded in Santa Fe County, Plaintiffs again allege that OneWest has "no legal standing" to foreclose on the loan. *Id.* at 5-6.

As noted, the Plaintiffs have copied verbatim many of the allegations in the Arizona complaint cited above and from an Ohio form complaint found at livinglies.files.wordpress.com/2008/07/federalcomplaint-ohio.pdf.. "Living lies" is a website and blog created and published by attorney Neil Garfield[4].

_____

[3] The Federal Trade Commission has issued a Consumer Alert on the topic, cautioning homeowners to avoid the "Forensic Mortgage Loan Audit Scam." *See* http://www.ftc.gov/bcp/edu/pubs/consumer/alerts/alt177.shtm (site last visited 1/28/2013).

[4] For other examples of cases in which these general complaints contain information supplied by Mr. Garfield, see *Maixner v. BAC Home Loans Servicing, LP*, Civ. No. 10–3037–CL, 2011 WL 7153929, 3 (D.Or. Oct. 26, 2011) ("Maixner also offers as fact extended excerpts from a Securitization Research Commentary' ('SRC') obtained through LuminaQ and authored by Neil Garfield, an attorney licensed to practice in Florida who Maixner asserts is a 'nationally recognized expert in mortgage securitization.' ( *Id*., ¶¶ 14–22 & Ex. I). A review of the SRC reveals that this document consists primarily of a general commentary regarding the practice of mortgage securitization accompanied by Garfield's opinion 'as an expert in securitization' regarding the significance of these practices with respect to the Maixners' mortgage loan, not of which are properly offered as fact" and dismissing with prejudice the plaintiffs claims seeking an "order holding the mortgage on their property to be void and unenforceable, the pending non-judicial foreclosure proceeding unlawful, and seeking damages for violations of, among others, the

As noted, when reviewing the non-general and non-conclusory allegations not contained in

the form complaint, the principle basis of the named Defendants' allegedly wrongful foreclosure

practice appears to be that OneWest does not have legal standing to foreclose on the loan and

mortgage notwithstanding the fact that it purchased IndyMac's assets from the FDIC.  *See* Compl.

at 1-4 (stating that IndyMac was "acquired" by OneWest Bank); Am. Compl. at 5, ¶ 10 ("OneWest

bank acquired certain assets from the FDIC of IndyMac Bank.").

---

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and the Truth in Lending Act ("TILA") 15 U.S.C. § 1601 et seq.)"); *Sainte v. Suntrust Mortg., Inc.*, No. 1:10–CV–1637–TWT–WEJ, 2010 WL 4639242, *1 (N.D.Ga. Sept. 15, 2010) (recommending dismissal of case after noting that, as alleged in the Salazar's case, "Plaintiff further alleges that the securitization of his mortgage loan exposes him to liability to 'potentially dozens or even thousands of third parties [that] could come forward claiming an unsatisfied interest in the promissory note.' ( Id. ¶ 7.) As a result of plaintiff's inability to establish chain of title to his property, he 'is left in the position of being in an adversary proceeding with ghosts.' ( Id. ¶ 13.) Plaintiff alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq., the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq., the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and a state law claim for quiet title. (Pet.¶¶ 17–43.)" and noting that, "[i]n its discussion of shotgun pleadings, the Court observed that plaintiff filed a pro forma complaint that is widely available on the internet, *see, e.g.*, http://mariokenny.wordpress. com/category/nature-of-the-action-by-neil-garfield/, and frequently filed in this Court.  *See, e.g., Dan v. Bank of America*, No. 1:10–cv581–CAP (N.D. Ga. filed Mar. 1, 2010); *Myers v. Countrywide Home Loans*, No. 1:10–cv–0536–JEC (N.D. Ga. filed Feb. 25, 2010); *Clark v. Wells Fargo Bank N.A.*, No. 1:09–cv–2742–CAP (N.D. Ga. filed Oct. 2, 2009); *McGrue v. Wells Fargo Bank N.A.*, No. 1:09–cv–2733–CAP (N.D. Ga. filed Oct. 2, 2009)"); *Straker v. Deutsche Bank Nat Trust*, No. 3:CV-09-0338, 2010 WL 500412, 1 (M.D.Pa. Feb. 5, 2010) (noting that "[a] significant portion of the body of Plaintiff's Complaint can be found in Nature of the Action by Neil Garfield. Accordingly, there are only a handful of statements included in Plaintiff's Complaint that are personal to her claim and not pulled directly from the above-posted source" and dismissing claims "alleging violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639; the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. (Comp., Dkt.1.) . . . and claims of fraudulent misrepresentation, unjust enrichment, civil conspiracy, civil RICO, quiet title, and usury" as improperly pleaded against all Defendants).

The Amended Complaint contains no allegations regarding OneWest Bank's counsel, other than to state that they filed the foreclosure action and that Elizabeth Dranttell "ignored" the notice of removal at the summary-judgment hearing.  *See* Am. Compl. at 10.

## II.    ANALYSIS

In resolving a motion to dismiss, the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in the Plaintiffs' Amended Complaint.  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).   A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the Plaintiffs' pro-se complaint, the Court applies the same legal standards applicable to pleadings drafted by counsel but liberally construes the allegations.  *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992).   A pro-se plaintiff, therefore, "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).   "[The] court . . . will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (internal quotation marks and citations omitted).

In resolving the motion, the Court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its

authenticity; and matters of which a court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation marks omitted).

A district court may *sua sponte* dismiss a pro-se complaint action on the basis of a statute of limitations if "it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue." *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009).

## A.   THIS COURT HAD NO AUTHORITY TO STAY THE FORECLOSURE PROCEEDINGS.

28 U.S.C. § 2283, the federal Anti-Injunction Act ["AIA"], "is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act," *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977), none of which apply here. *See Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970) (noting that "the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts"). "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately to the [Supreme] Court [of the United States]." *Id.* This Court had no authority to interfere in the court-ordered foreclosure and sale proceedings. The Salazars' remedy is to appeal from the foreclosure orders that they contend are erroneous to the state appellate courts after a final order has been entered.

## B.   THE COURT MUST DISMISS OR STAY CLAIMS RELATED TO THE FORECLOSURE PROCEEDINGS.

11

The Defendants urge dismissal of the Plaintiffs' Amended Complaint and the subsequently filed Complaint for Declaratory and Injunctive relief under the *Rooker-Feldman* doctrine. *See* Doc. 34 at 2, 7-9. But no final judgment has been entered in the state-court case, nor has an appeal been taken and decided. Therefore, the state case is not final for purposes of applying that doctrine. *See Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006) (noting that state-court proceedings are considered to be "ongoing" until "a lower state court issues a judgment and the losing party allows the time for appeal to expire.") (internal quotation marks and citation omitted); *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006) ("Under *Exxon Mobil*, the *Rooker-Feldman* doctrine only applies to cases brought 'after the state proceedings have ended.' 125 S.Ct. at 1526. State proceedings had not ended when Guttman filed his federal court claim. As such, the *Rooker-Feldman* doctrine does not apply and the district court did have subject matter jurisdiction.").

Defendants next contend that the Plaintiffs' action should be dismissed under the state common-law "doctrine of priority jurisdiction." Doc. 34 at 2, 9-11. That doctrine was first adopted by the New Mexico Supreme Court in 1962, and generally posits that

> a second suit based on the same cause of action as a suit already on file will be abated where the first suit is entered in a court of competent jurisdiction in the same state between the same parties and involving the same subject matter or cause of action, if the rights of the parties can be adjudged in the first action.

*State v. Larrazolo*, 70 N.M. 475, 482, 375 P.2d 118, 123 (1962). But that doctrine applies only to courts within the state's state-court judicial system. It does not apply to concurrent litigation in state and federal courts, where it has long been held that parties may maintain concurrent lawsuits absent a good policy reason. *See, e.g.*, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981) ("[T]he mere grant of jurisdiction to a federal court does not operate to oust a state court from

12

concurrent jurisdiction over the cause of action."); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (holding, in case where parties brought same claims in both federal and state courts that "[a]bdication of the obligation to decide cases can be justified under [the abstention] doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest") (internal quotation marks omitted). This abstention doctrine, however, provides a mandatory basis for dismissal in this case.

> "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief-such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings-when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Taylor*, 126 F.3d at 1297. *Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances. *See Seneca-Cayuga Tribe of Okla. v. State of Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)

*Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir.1999). "*Younger* abstention is jurisdictional" and should be addressed "at the outset because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim, including a different jurisdictional challenge." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004).

### 1. The state-court proceedings are ongoing.

As noted, state-court proceedings are considered to be "ongoing" until "a lower state court issues a judgment and the losing party allows the time for appeal to expire." *Bear*, 451 F.3d at 642 "The time frame for this determination is when the federal action was filed." *Dauwe v. Miller*, 364

Fed. App'x 435, 437 (10th Cir. 2010).  In this case, the Plaintiffs' federal action was filed the same day the state-district court held a hearing on OneWest's motion for summary judgment, and the state-court proceedings are still ongoing, as reflected by the docketing statement the Plaintiffs filed in this Court.  Because Plaintiffs' federal action was filed while state-court foreclosure proceedings were ongoing, the Court concludes that the first prong of the *Younger* abstention doctrine is satisfied.

> **2.  The state-court proceedings provided an adequate forum to hear the claims raised in the Plaintiffs' federal complaint.**

"Typically, a plaintiff has an adequate opportunity to raise federal claims in state court 'unless state law clearly bars the interposition of the [federal statutory] and constitutional claims.'" *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999)).  Here, the Plaintiffs point out that they have already raised many of the same issues, defenses, and claims in the state-court foreclosure proceedings that they raise in this federal case.  *See* Doc. 22 at 7-8; Am. Compl. at 10-11.  And the Defendants have conclusively established.  *See* Doc. 34 at 2 (attaching answer and motions filed by the parties in the state-court proceedings and noting that, "after a hearing on the merits on a motion for entry of summary judgment, [the court] held that MERS had the right to Assign the Mortgage, that OneWest had the right to foreclose, granted OneWest judgment for the amounts due on the mortgage loan, held OneWest's mortgage is the senior lien on the property, and ordered that the property be sold at a foreclosure sale").  For example, in their Answer to OneWest's foreclosure complaint, the Plaintiffs argued that "OneWest was not authorized to bring the action; OneWest attached forged and fraudulent evidence to bring the action; the Borrowers did not owe

14

OneWest any money; OneWest was not the assignee of the Mortgage; OneWest did not have standing to maintain the foreclosure action." *Id.* at 4; *see* Doc. 36-1 (Plaintiffs' Answer). And even if some of their defenses to foreclosure were not raised in the state-court proceedings, the "pertinent issue is whether the claims *could have been* raised in the pending state proceedings." *J.B. ex. rel. Hart*, 186 F.2d at 1892 (emphasis in original; internal quotation marks omitted). The Plaintiffs must establish that state law barred the presentation of their claims, but they cannot do so. *See id.* Because the Plaintiffs cannot produce any evidence demonstrating their federal claims were barred in the state-court foreclosure proceedings, the Court concludes that the second prong of the *Younger* abstention doctrine is satisfied.

> **3.  The state-court foreclosure proceedings involve important state interests that traditionally look to state law for their resolution.**

The United States Supreme Court has noted that "the general welfare of society is involved in the security of the titles to real estate" and the power to ensure that security "inheres in the very nature of [state] government." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (internal quotation marks omitted) (holding "that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with"). The Tenth Circuit Court of Appeals held that the third prong of the *Younger* abstention doctrine was satisfied in a federal quiet-title suit, stating "what more important state interest is there for the state court to address than the enforcement of its method of registering good title to privately owned lands within the state?" *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997). *And cf. Lambeth v. Miller*, No. 09-3027, 363 Fed. App'x 565, 568, 2010 WL 299244, \*\*2 (10th Cir. Jan. 27, 2010) (holding that "zoning and

nuisance abatement issues are traditional state law matters that implicate important state interests, satisfying the third condition" of the *Younger* abstention analysis).  The Tenth Circuit has further recognized in dicta that a federal suit challenging a state-court foreclosure sale "could [not] pass muster" under the *Younger* abstention doctrine.  *DCR Fund I, LLC  v. TS Family Ltd. P'ship*, No. 05-6232, 261 Fed. App'x 139, 145-46, 2008 WL 196298, **5-6 (10th Cir. Jan. 24, 2008) (holding that the district court properly refused to consider the defendants' request for injunctive relief to halt a foreclosure sale and claims for conspiracy, abuse of process, and conversion associated with that sale).  Thus, the district courts in this circuit and other circuits consistently have held that abstention under the *Younger* doctrine is mandatory when a federal action implicates title to real property and state-court foreclosure proceedings are ongoing.  *See, e.g., Barefoot, et al., v. Onewest Bank, FBS, et al.*, No. 11-CV-0038 JB/LFG, Doc. No. 10 (D.N.M. Feb. 23, 2011) (adopting the magistrate judge's report recommending abstention under the *Younger* doctrine where the plaintiffs requested a TRO  and preliminary injunction to halt a foreclosure sale); *Beeler Prop., LLC v. Lowe Enter. Residential Investors, LLC*, No.07-CV-00149-MSK-MJW, 2007 WL 1346591, at *3 (D. Colo. May 7, 2007) (holding that "[a]ctions that challenge the [foreclosure] order and process are proceedings involving important state interests concerning title to real property located and determined by operation of state law"); *Mayeres v. BAC Home Loans*, No. 10-44816 MBK, ADV. 11-1516 MBK, 2011 WL 2945833, *4 (Bankr. D.N.J. Jul 21, 2011) (abstaining under *Younger* doctrine because "matters presented in the Complaint are clearly the subject of a pending state foreclosure matter . . . [and the plaintiff's] claim that the mortgage interest is invalid is a core issue in that state litigation. Additionally, the State of New Jersey has an important interest in determining title to real property located and governed by state law."); *Beck v. Wells Fargo Bank*, No. 10–4652, 2011 WL 3664287

(E.D.Pa. Aug. 19, 2011) (abstaining from actions seeking to enjoining state foreclosure because "[t]he state has an important interest in resolving disputes related to real property located within its jurisdiction, as such disputes implicate matters primarily governed by state law" and "failure to abstain would unduly interfere with the state court's ability to manage the mortgage foreclosure action, a proceeding which 'traditionally is handled in state court.' *Nat'l City Mortgage Co. v. Stephen*, 09–1731, 647 F.3d 78, 2011 WL 2937275, at *7 (3d Cir. July 22, 2011)"); *Bank of America v. Sharim, Inc*., No. 10 Civ. 7570(PAC), 2010 WL 5072118 at **3-4 (S.D.N.Y. Dec. 13, 2010) (abstaining under the *Colorado River* abstention doctrine).

Plaintiffs' Amended Complaint, which asks this Court to adjudicate Plaintiffs' right and title to the subject property, implicates an important state interest controlled by state foreclosure law. Because all three factors mandating abstention exist in this case, the Court concludes that it must abstain from exercising jurisdiction over Plaintiffs' action for declaratory and injunctive relief, including jurisdiction over Plaintiffs' claims to quiet title, and that those claims must be dismissed pursuant to the *Younger* abstention doctrine.

**4. Plaintiffs' claim for monetary damages under the FCRA and their state-law claim for fraud against OneWest must be dismissed.**

The Salazars' allegation that they made every loan payment on time, from the time of the loan's execution to the present date comes from the form complaint and has been rejected by the state court. Similarly, their allegation that signatures on the assignment have been forged or are fraudulent are recommended general allegations promoted by the form complaints and has been rejected. Those findings are not conclusive at this point, however. Under these circumstances, the Court will dismiss these claims without prejudice and remind the Salazars that, if in the future, they

file a complaint making these allegations and they are false, they will face sanctions for perjury.

Even if the Court permitted the Salazars to again amend their complaint, their federal statutory claims for monetary damages under the FCRA hinge on whether they made their mortgage payments on time, and the answer to that question is inextricably intertwined with OneWest's right to foreclose on the loan for failure to make timely payments and to report the default on the note. Similarly, any state-law claim for fraud associated with the allegation that OneWest allegedly falsified the notary stamp and signatures on the assignment of the mortgage is inextricably intertwined with OneWest's assertion that the mortgage was properly assigned to it before it brought the foreclosure proceedings. Thus, the Court would be required to stay any action for damages under the FCRA and the state-law claim for fraud until a final judgment is entered in the foreclosure proceedings. *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d at 1228 (holding that, as to claims for monetary damages, "[t]he rationale for *Younger* abstention can be satisfied ... by just staying proceedings ... until the state proceeding is final"). Since it appears that the Salazars have only parroted allegations from the form complaints, the better course of action is simply to dismiss those claims without prejudice.

### C. THE SALAZARS' POTENTIAL CAUSES OF ACTION UNDER TILA, HOEPA, AND RESPA AND OTHER STATE-LAW CLAIMS ARE TIME BARRED.

The Salazars' potential causes of action under RESPA, TILA, and HOEPA, and the state-law claims for fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, conspiracy and usury during the loan process  are supported only by the general allegations copied from the form complaint. Those allegations do not set out the names of the actual mortgage broker and originating lender who participated in the settlement of the loans and whose names are on the Salazars' closing

18

documents and who allegedly are the actual entities or individuals who failed to properly disclose information and incorrectly calculated interest, etc.  According to the Salazars' specific allegations, none of the named Defendants – except possibly IndyMac –  participated in the activities leading up to the execution and closing of the loan, thus they have failed to state claims against the named Defendants except for IndyMac for the alleged statutory and state-law violations and they should be dismissed.  But even if IndyMac participated in the alleged bad acts, the relevant statutes of limitations and statute of repose have long passed to bring suit on these actions or omissions, which occurred in August 2007.

"Congress passed TILA to promote consumers' 'informed use of credit' by requiring 'meaningful disclosure of credit terms ' . . . " *Chase Bank USA, NA v. McCoy*, ––– U.S. ––––, 131 S. Ct. 871, 874, 178 L. Ed.2d 716 (2011); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1179 (10th Cir. 2012).  HOEPA was enacted as an amendment to TILA and "applies to a special class of regulated loans that are made at higher interest rates and are subject to special disclosure requirements."  *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 282 (3rd Cir. 2010); *Rosenfield*, 681 F.3d at 1177 n.3 ("HOEPA is just an amendment to TILA itself").  Claims for damages brought under either TILA or HOEPA are subject to a one-year statute of limitations.  *See* 15 U.S.C. § 1640(a), (e); *Heil v. Wells Fargo Bank, N.A.*,  298 Fed. App'x 703, 706-707, 2008 WL 4516685, *3 (10th Cir. 2008).  "'Equitable tolling' is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances" and may apply to toll the statute of limitations for damages for claims brought under TILA and/or HOEPA.  *See Heil*, 298 Fed. App'x at 706 (internal quotation marks omitted).  But to invoke equitable tolling, the plaintiff must allege that, despite the exercise of due diligence, he was unable

to discover the conduct that gives rise to his claims. *See id.* at 706-07. There are no allegations in the Salazars' complaint to support either fraudulent concealment or due diligence in attempting to discover IndyMac's alleged wrongful actions or omissions.

15 U.S.C. § 1635(f) provides, in relevant part, that the "obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon . . . sale of the property." 15 U.S.C. § 1635(f). The United States Supreme Court has held that claims for rescission under TILA or HOEPA are subject to an absolute three-year statute of repose that "completely extinguishes the right of rescission under TILA at the end of the specified three-year period," including using it as a defense to foreclosure. *See Rosenfield*, 681 F.3d at 1180-81 (citing and quoting extensively from *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998)). Thus, equitable tolling based upon a creditor's alleged fraudulent concealment does not apply to claims for rescission under TILA or HOEPA. *See id.* at 1181 (citing and quoting *Jones v. Saxon Mortg.*, 537 F.3d 320, 327 (4th Cir. 1998)).

The relevant date for determining whether Plaintiffs' TILA and HOEPA claims are barred is the date on which they entered into the loan agreement: August 22, 2007. *See* Doc. 20 at 5. The one-year statute of limitations for monetary damages thus ran on August 22, 2008, and the three-year statue of repose for that transaction was reached on August 22, 2010. This action was not filed until November 15, 2012. Consequently, Plaintiffs' claim for money damages or rescission of the contract under TILA or HOEPA are barred.

Similarly, Plaintiffs have named no defendants who provided "real estate services" to them before or during their loan transaction, or that they rendered any "settlement service" for which any of the named defendants could be held liable. *See* 12 U.S.C. §§ 2602(3) and 2607. They have failed

20

to state a cognizable claim under RESPA against these Defendants.  But even if they amended their Complaint again to add more defendants, claims for damages under RESPA are also subject to a one-year statute of limitations.  *See* 12 U.S.C. § 2614 (stating that statute of limitations for violations of §§ 2607 or 2608 of RESPA is one year "from the date of the occurrence of the violation").  The Court will dismiss these claims.

Most of Plaintiffs' remaining state-law claims are also barred by the applicable statutes of limitations.  "The statute of limitations for causes of action sounding in fraud or conversion is four years from the date that the cause of action accrues. NMSA 1978, § 37–1–4 (1880)."  *Wilde v. Westland Dev. Co.*, 148 N.M. 627, 634, 241 P.3d 628, 635 (Ct. App. 2010).  Thus, Plaintiffs' claims for fraudulent misrepresentation against IndyMac arising from events occurring in 2007, insofar as they may be sufficiently pleaded to state a claim, are now barred.

"Unjust enrichment ... is a theory under which an aggrieved party may recover from another party who has profited at the expense of the aggrieved party."  *Heimann v. Kinder–Morgan CO2 Co.*, 140 N.M. 552, 558, 144 P.3d 111, 117 (Ct. App. 2006).  Plaintiffs appear to base their claim for unjust enrichment on allegations taken from a form complaint, but should IndyMac have been the originating lender at the closing, their allegations could relate to its alleged actions in charging a "higher interest rate" than Plaintiffs say it should have charged and receiving kickbacks, rebates, or other fees "at closing."  *See* Am. Compl. at 23.  Because the claim for unjust enrichment is associated with unwritten or implied contracts, the four-year statute of limitations applying to actions founded on unwritten or implied contracts applies to, and bars, this claim.  *Cf. Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 179, 793 P.2d 855, 861 (1990) (holding that "even though an action for unjust enrichment is not 'based on contract' in a strict theoretical sense, it is so closely

21

related to an action which is so based that the immunity statute here, Section 37-1-23, should be construed to extend immunity to an unjust enrichment claim as well as to a claim founded on a true, but unwritten, contract"); NMSA 1978 § 37-1-4 (statute of limitations on actions "founded upon" unwritten contracts is four years).

Similarly, the Plaintiffs' claims for breach of fiduciary duty and conspiracy also arise from activities occurring before or during the August 2007 closing and are time barred. *See* Am. Compl. at 21-24. "Under NMSA 1978, § 37-1-4 (1880), the statute of limitations for bringing an action for damages based upon allegations of conspiracy to defraud and fraud, and breach of fiduciary duty is four years." *Durham v. Southwest Developers Joint Venture*, 128 N.M. 648, 658, 996 P.2d 911, 921 (Ct. App. 1999).

**D.  THE PLAINTIFFS HAVE FAILED TO STATE A STATE-LAW CLAIM FOR RICO VIOLATIONS, FOR USURY, OR AGAINST ANY ATTORNEY OR FIRM REPRESENTING ONEWEST BANK.**

The Plaintiffs' claims for civil RICO violations based upon Ohio law, *see* Am. Compl. at 24-25, and their claims alleging "usury" based upon an undescribed lender who was not a "properly chartered or registered financial institution" *id.* at 29, clearly are taken from the form complaint and are nonsensical in the context of this case.  And although Plaintiffs refer to New Mexico statutes forbidding usury, they do not cite any statute that provides a basis for their claims.  Further, the Supreme Court has held that the National Bank Act provides the exclusive cause of action for usury claims against national banks, and there is a 2-year statute of limitations for such a claim.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10-11 (2003).  Because 12 U.S.C. "§§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law

claim of usury against a national bank." *Id.* at 11. These claims must be dismissed for failure to state a cognizable claim under *Iqbal*, 556 U.S. at 678.

The Complaint is devoid of any factual allegations to support a cognizable claim for relief regarding the individual attorney/Defendants and lawfirm that have represented OneWest in the state foreclosure proceedings. Those claims must be dismissed under *Iqbal.*

## III. CONCLUSION

All claims against all Defendants must be dismissed under *Younger* abstention or because they are barred by the applicable statutes of limitations or because the Plaintiffs have failed to state cognizable claims for relief.

**IT IS ORDERED** that Plaintiffs' request that the Court take judicial notice (Doc. 20) is GRANTED only to the extent that the Court will take judicial notice of the state foreclosure proceedings and docket sheet attached to that motion;

**IT IS FURTHER ORDERED** that the Plaintiffs' motion for emergency injunctive relief (Doc. 22) is DENIED;

**IT IS FURTHER ORDERED** that the Defendants' motion to dismiss [Doc. 33] is GRANTED for the reasons stated in this memorandum opinion and order;

**IT IS FURTHER ORDERED** that the Amended Complaint be and here by is DISMISSED without prejudice and all other pending motions are dismissed as moot.

**SO ORDERED** this 28th day of February, 2013, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
Chief United States District Judge

23